IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA f/u/b/o
TYLER MECHANICAL CONTRACTING,
  INC.
10087 Tyler Place, Hyatt Park, II
Ijamsville, Maryland 21754

    Plaintiff,

    v.

NATIONAL FIRE INSURANCE COMPANY
  OF HARTFORD
8403 Colesville Road - Suite 500
Silver Spring, Maryland 20910

    <u>Serve On</u>:

    CT Corporation
    1015 15th Street, NW
    Suite 1000
    Washington, DC 20005
    Registered Agent

    Defendant.

Case No.:_____

\*   \*   \*   \*   \*

## COMPLAINT

Tyler Mechanical Contracting, Inc., Plaintiff, by its attorneys, Michael Green and Margolis, Pritzker, Epstein & Blatt, P.A., sues National Fire Insurance Company of Hartford, Defendant, and as grounds therefore states as follows:

### THE PARTIES

1.    Tyler Mechanical Contracting, Inc. is a body corporate of the State of Maryland, engaging in the business of mechanical contracting in and about the State of Maryland, the District of Columbia and Virginia.

2. National Fire Insurance Company of Hartford is a Connecticut corporation, having an office in Silver Spring, Maryland, and is a surety company engaged in the business of issuing payment and performance bonds for construction projects in and about the United States, including Maryland and the District of Columbia.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is based upon 28 U.S.C. §§1331 and 1352.

4. Venue is proper in the U.S. District Court for the District of Columbia pursuant to the provisions of 40 U.S.C. §3133(b)(3)(B).

## FACTUAL ALLEGATIONS

5. On or about October 17, 2001, Tyler Mechanical Contracting, Inc. (hereinafter referred to as "Tyler"), Plaintiff, contracted with Grunley Construction Co., Inc. (hereinafter referred to as "Grunley Construction"), Defendant, to perform mechanical contracting services for the modernization of the IRS Headquarters located at 1111 Constitution Avenue, N.W., Washington, DC, Contract No.: GS-11P01MKC-0001. A copy of the subject contract is attached hereto and incorporated by reference herein as Exhibit 1.

6. National Fire Insurance Company of Hartford was the surety for the aforementioned contract, guaranteeing payment to subcontractors, including the Plaintiff, under the terms of a payment bond executed on or about May 24, 2001, to protect the United States of America from claims and liens in the event of non-payment by Grunley Construction. A copy of the form 25-A (Payment Bond) is attached hereto and incorporated by reference herein as Exhibit 2.

7. Tyler performed all services in a safe, careful and workmanlike manner, and completed all contractual obligations for the subject project on June 30, 2006.

8. During the course of Tyler's performance under the contract a dispute arose between the parties as to the amount due and owing to Tyler under the contract.

9. Tyler and Grunley then entered into a settlement agreement of all disputes under the aforesaid contract whereby Grunley agreed to pay a total of $775,716.98.

10. Grunley paid an initial installment of $200,000.00 and a second payment of $292,263.98 leaving a balance of $283,453.00 due and owing under the contract.

11. Despite repeated requests for payment, Grunley has failed and refused to pay Tyler the balance due and owing under the terms of the contract, which balance remains $283,453.00 .

## BREACH OF CONTRACT - NATIONAL FIRE

12. Tyler hereby incorporates by reference its allegations contained in Paragraphs Nos. 1 through 11.

13. National Fire has breached its surety obligations to Tyler by failing and refusing to pay the amounts due and owing by the Defendant, Grunley Construction, despite repeated demands therefore. These breaches of contract have further caused Tyler additional damages in that it has been forced to incur attorney's fees and costs.

WHEREFORE, Tyler demands judgment against National Fire in the amount of $283,453.00, plus interest, attorney's fees and costs.

_____
Michael Green    DC Bar #231597
Margolis, Pritzker, Epstein & Blatt, P.A.
110 West Road - Suite 222
Towson, Maryland 21204
(410) 823-2222

Attorneys for Plaintiff





TYLER MECHANICAL
DC DIVISION

October 18, 2001

TYLER MECHANICAL CONTRACTING, INC.
1850 I Street, NW
Washington, DC 204336

Re: Modernization of IRS Headquarters, 1111 Constitution Avenue, NW, Washington, DC
Contract #: GS-11P01MKC-0001

Gentlemen:

Grunley Construction herewith returns one (1) executed subcontract agreement for your use and files on the above referenced project.

We look forward to working with you on this project.

Sincerely,
GRUNLEY CONSTRUCTION CO., INC.

*Caroline R May*

CAROLINE R. MAY, ESTIMATING COORDINATOR

cc:   M. R. Grunley, w/encl
      C. Hightower, w/encl
      Accounting, w/encl
      Executive, w/encl
      Field, w/encl
      PM, w/encl
      PM Booklet, w/encl
      Main File (Original), w/encl

**EXHIBIT 1**


**GRUNLEY CONSTRUCTION**

## SUBCONTRACT AGREEMENT

SUBCONTRACT AGREEMENT MADE BETWEEN

THE CONTRACTOR: **GRUNLEY CONSTRUCTION CO., INC.** AND

THE SUBCONTRACTOR: **TYLER MECHANCIAL CONTRACTING-INC.**
**1850 I Street NW**
**Washington, DC 204336**

### 1. THE PROJECT

**GRUNLEY JOB NUMBER:** G01.74    **JOB INFO PACKAGE ENCLOSED** Yes

**COST CODE:** 15-100    **NOTICE TO PROCEED:** 06/06/2001

**CONTRACT NUMBER:** GS11P-01MKC-0001

**JOB NAME:** Modernization of IRS Headquarters
        1111 Constitution Avenue, NW
**LOCATION:** Washington, DC

### SCOPE OF WORK

2. Subcontractor warrants that it is thoroughly familiar with the site conditions *that are apparent in the contract documents or apparent from a site investigation* and the Prime Contract Documents and that the Subcontractor shall furnish anything necessary to complete in place the <u>See Sections listed below</u> work as set forth below in strict accordance with the Prime Contract Documents (including plans and specifications, general provisions, general and special conditions, and addenda(s) Nos. 7,8,9 and 10).

SECTIONS: : Division 15 Complete (except as noted) and applicable portions of Division 0 Administrative Requirements, Division 1 General Conditions, 02070 Selective Demolition, 07270 Firestopping, 07920 Sealants, 09900 Painting, Division 13 Special Construction and Division 16 Electrical.

INCLUDES: Furnish all labor, materials and equipment to perform all mechanical and plumbing work in strict accordance with the contract documents for the base bid and Amendments #7-10.

Specifically included, but not limited to:
1. Phasing, sequencing and interim completion dates per Section 01015-Option and Phasing Requirements and as indicated on the phasing plans included in the applicable drawings and Grunley Constructions Project Schedule *as agreed to by subcontractor.*
2. Performance of work during off hours *and daytime hours as permitted by the building occupant.*
3. *Supervision during performance of work other than the standard work hours described in the specifications (For Example: work during the daytime when a majority of work is being performed at night or during shift hours.)*
4. AutoCAD Version 13 as-builts as required in metric, *background drawings to be provided by GC* Coordinated drawings in AutoCAD Version 13 in metric
5. *Mechanical, electrical coordinator as required to satisfactorily perform all contract work* All necessary submittals shall be forwarded no-later-than July 30, 2001 *or as required to not to impeded the progress of the construction.*
8. Full compliance with security regulations per Section 01010 Summary of work and Section 01541 - Security Regulations
9. ~~All drilling and cutting tools must be equipped with HEPA filters and collection~~
10. Utilization of specified manufacturers for all materials, equipment and systems
11. Coordinate use of loading dock with building occupants.
12. Rerouting, temporary services and modifications required to keep the building in service and to facilitate the work of other trades including water for hazardous material abatement units *limited to a reasonable quantity of temporary ¾" hose bib connections to within twenty (20) feet of the existing water sources and requiring no shut down of building systems.*
13. ~~Removal of items used for temporary services or items that must be removed out-of-sequence due to phasing~~
14. Removal, storage, cleaning and reinstallation of electrical items to be salvaged
15. Temporary and permanent starters not in motor control centers.
16. Installation of new *mechanical and plumbing equipment* and tie-in to existing


17. Relocation of air handling equipment to adjacent spaces and tie-in of temporary to existing systems *to the extent shown on the drawings*
18. Disconnecting of services to relocated mechanical equipment for bulk demolition by others *to the extent shown on the drawings.*
19. Demolition of all other services, except as specifically listed above, used for temporary or services that are to be demolished out-of-sequence due to phasing or due to the requirement to maintain services to occupied areas. *to the extent shown on the drawings*
20. Maintain heating and cooling to the building throughout the construction period *to the extent shown on the drawings*
21. Resupport any mechanical items to remain (temporarily or permanently) *to the extent shown on the drawings*
22. Rerouting, temporary services and modifications required to keep the building in service and to facilitate the work of other trades *using existing mechanical equipment piping, ductwork, controls and new equipment to the extent shown on the drawings*
23. *Grunley Construction and Tyler Mechanical mutually agree that work not shown on the drawings but required to perform and complete the above contract items 17,18,19,20,21 and 22 are to be added to this subcontract by contract modification only if added to the prime contract by the owner. In the event that the prime contractor is not compensated for these items, Tyler Mechanical will not request compensation for these items from Grunley Construction.*
24. *Selective* demolition and replacement of under floor piping to include excavation, backfill, temporary supports, piping, hangars and tie-into new concrete slabs all within the building and the moat areas.
25. All new mechanical and plumbing systems *as shown on the drawings.*
26. *Mechanical in basement level and all underground piping.*
27. Setting and tie-in of terrazzo shower bases furnished by GC
28. Control wiring for mechanical equipment *as shown on the drawings*
29. Louvers not shown on architectural drawings.
30. Removal, storage, protection, cleaning and reinstallation of items shown to be salvaged *as indicated on the MEP drawings and specifically described in the specifications*
31. ~~Locating existing reinforcing, core drilling,~~ sleeves, ~~sealants~~ and firestopping of your floor and wall penetrations.
32. Equipment supports not shown on architectural or structural drawings
33. Scaffolding and any other means necessary to access your work area(s)
34. ~~Furnish access doors required for access to your work.~~
35. ~~Patch at new pipe penetrations~~
36. *Coredrilling, drilling or cutting in a workmanlike manner to minimize substrate damages.*
37. Water treatment for all new work form points of connection through discharge locations
38. Temporary pumps, supplied by Grunley. Tyler to move in/out, place, connect, service and disconnect as required of needed.
39. Fall protection for your work *control lines shall be provide by GC*
40. Layout of walls, floors and ceilings for chasing and for access above ceilings to perform your work
41. Caulking associated with your work *limited to toilet fixtures and piping and ductwork penetrations*
42. All materials and debris through normal building openings *except as provided by GC.*
43. *GC shall provide access into mechanical rooms at Four (4) locations not to exceed 120 SF.*
44. Rigging, craning and delivery of all materials and equipment
45. System Testing and inspection in your sections
46. Identification, stenciling, arrows and signage for your work.
47. ~~All required permits and fees for your work.~~
48. Scaffolding to perform your work
49. Daily clean up and removal of debris to Grunley-provided dumpster.
50. Payment and performance bond.
51. *Tyler Mechanical Attachment A and additional attachments described within the attachment.*

Also included are: all security and safety requirements, compliance with GSA and IRS regulations and restrictions, security clearances by the IRS, over time and shift work, submittals, certifications, warranties, maintenance instructions, samples, testing, test reports, warning signs, product data, shop drawings, coordinated drawings, spare stock, as-built documents, Operations and Maintenance instructions and manuals, field measurements, layout, scaffolding to perform your work, all equipment through normal building openings, daily clean up, removal of debris to Grunley Construction dumpster, coordination with Grunley, IRS, GSA and other trades; freight charges, protection of materials during shipping, unloading of materials, no on-site parking and storage, off-site storage of materials and equipment, participation in scheduling, protection of existing elements, quality control, permits, fees and applicable taxes.

Grunley Construction reserves the right to exercise all remaining contract options as described in the prime contract documents and as listed below until January 15, 2002:



| | | | |
|---|---|---|---|
| **I. Base Bid-Item1c, Base Contract Evaluated Option C** | (Add) | $ | 28,000.00 ✓ |

Specifically included, but not limited to:
1. New HVAC and plumbing in switchgear room number **G005**
2. All means and methods described in base contract.

| | | | |
|---|---|---|---|
| **II. Option 1-Item II** | (Add) | $ | 171,000.00 ✓ |

Specifically included, but not limited to:
1. New HVAC equipment for electrical switchgear upgrades
2. *All work indicated in the Option 1 mechanical and plumbing drawings*
3. All work defined by Base Bid –Option C
4. All means and methods described in base contract.

| | | | |
|---|---|---|---|
| **II. Option 1-Item IIa, Contract Evaluated Option 1-Option A** | (Credit) | ($ | 28,000.00) ✓ |

Specifically included, but not limited to:
1. Deletion of work provided as Base Bid - Option C
2. Mechanical and plumbing in switchgear room G005

| | | | |
|---|---|---|---|
| **III. Option 2-Item III** | (Add) | $ | 275,000.00 ✓ |

Specifically included, but not limited to:
1. 18 Designated bathroom upgrades 1221, 1223, 1564, 1602, 2223, 2225, 2576, 2602, 3223, 3225, 4223, 4225, 5223, 5225, 6223, 6225, 7223 and 7225
2. *All work indicated in the Option 2 mechanical and plumbing drawings*
3. All means and methods described in base contract.

| | | | |
|---|---|---|---|
| **III. Option 2-Item IIIa, Contract Evaluated Option 2-Option A** | (Add) | $ | 940,500.00 ✓ |

Specifically included, but not limited to:
1. New Bathroom upgrades in occupied areas except bathrooms in option II
2. *All work indicated in the Option 2 mechanical and plumbing drawings*
3. All means and methods described in base contract.

**EXCLUDES:**
1. Patching, and painting
2. Concrete *bases and housekeeping pads*
3. Sprinkler work
4. Sawcutting, demolition and patching of slabs
5. Cutting of walls for new ductwork
6. Removal and replacement of existing ceilings.
7. Sales tax on materials
8. Install exhaust fans and other means to maintain negative air during demolition work.
9. Furnishing of terrazzo shower bases
10. Stone bedding *and covering* for underground piping
11. Temporary heating and cooling *utilizing portable or temporary equipment not shown on the drawings*
... Removal and replacement of exterior or areaway walls for access.
13. *Pumping required to perform Dewatering.*
14. *Catch basins as detailed on the structural drawings*
15. *Any and all concrete or masonry demolition or replacement*
16. *Temporary lighting, water, sewer, heat, HVAC, ventilation and toilet facilities except as noted above*
17. *Ventilation of work areas*
18. *X-ray of slabs*
19. *Unforeseen conditions including acid soil*
20. *Select backfill*
21. *Removal of any excavation spoils or abandoned piping from site*
22. *Sidewalk and areaway removal and replacement*
23. *Window, wall, door and any other item removal and replacement for access at locations provided by GC*
24. *Removal and disposal of items and equipment designated to be demolished*
25. *Rock removal if encountered*

**FLOW-DOWN RELATIONSHIP**

3. The Subcontractor is bound to the Contractor in the same way the Contractor is bound to the Owner and shall assume toward the Contractor all the obligations and responsibilities which the Contractor assumes toward the Owner and shall have the benefit of all rights, remedies and redress against the Contractor, pursuant to the Prime Contract, has against the Owner, except that this Subcontract shall govern any inconsistent provision of the Prime Contract.



## THE SUBCONTRACT SUM

4. The Contractor shall pay the Subcontractor for the performance of this Subcontract **Six Million Two Hundred Thousand Dollars ($ 6,200,000.00)** in partial payments as hereinafter described.

## PRICE AND PAYMENT

5. The Subcontract price shall be paid in partial payments, when received by the Contractor from the Owner, to Subcontractor for the payment for work in place and material on jobsite. ~~Payment from the Owner is a specific condition precedent to the Contractor's obligation to pay the Subcontractor, the risks of nonpayment by the Owner being on the Subcontractor for its portion of the work in place or material on the job-site.~~ *Notwithstanding other language in any document, payment to the contractor by the owner is not a condition precedent to contractor's payment to subcontractor except as described in paragraph 15 of the subcontract.* Ten percent (10%) retention shall be withheld until final payment is due except that retainage will be reduced when and to the extent the Owner's retainage withheld from the Contractor is reduced. Final payment shall be due after completion of all work, acceptance by the Owner, compliance with all Subcontract obligations, and receipt of final payment from the Owner, ~~which items shall be conditions precedent to the making of final payment to Subcontractor.~~ *Final payment shall be within forty-five (45) days after completion and acceptance.* The Contractor is entitled to proof of payment for labor, material and services used before any payment is due. Material paid for shall belong to the Contractor, but shall remain in the care, custody and control of Subcontractor and be stored at Subcontractor's risk. *Subject to its right to recover from others for damage*, the Subcontractor shall be responsible at all times for his labor and/or materials until same is accepted by the Owner. Subcontractor shall furnish guarantees and all other documents required by the Prime Contract for the Subcontractor's work, including releases of all claims and liens as a condition precedent for final payment. Partial releases may be required at the Contractor's option as a condition precedent to any partial payments for work completed and the Contractor may require the Subcontractor to certify and/or exhibit such other evidence that all entities furnishing labor, materials, and equipment under prior requisitions have been paid in full. Liquidated damages withheld by Owner will be assessed against Subcontractor, *only if and to the extent such damages are withheld as a result of*, for delay attributable to Subcontractor's fault. The Subcontractor shall itemize the Subcontract price as a basis for establishing value of work completed, and partial payments. Subcontractor agrees that it will not be paid by the Contractor for work and materials in place until ten (10) days after the Contractor's receipt of payment from the Owner. If the Contractor withholds making payment to the Subcontractor until the Subcontractor has complied with the aforesaid terms and conditions, the Subcontractor shall still diligently proceed with the work as required.

## LIABILITY AND INDEMNITY INSURANCE

6. The Subcontractor shall procure, at its sole cost and expense, the insurance coverages set forth below, and shall maintain such coverages in full force and effect as specified in this Paragraph. The Subcontractor shall include the Contractor [Grunley] as an additional insured to the insurance policies described below. The insurance coverage afforded under the policies described herein shall be primary and non-contributing with respect to any insurance carried independently by the Contractor. All such insurance policies shall indicate that as respects the insureds (whether named or otherwise), cross liability and severability of interests shall exist for all coverages provided thereunder. In addition, all such insurance policies shall include a waiver of subrogation endorsement in favor of the additional insured. The insurance specified below shall be placed with insurance companies reasonably acceptable to Contractor, shall be written on an occurrence basis, and shall incorporate a provision requiring the giving of notice to Contractor at least thirty (30) days prior to the cancellation, non-renewal or material modification of any such policies. The Contractor shall promptly furnish the Contractor with certificates of insurance evidencing the insurance required hereunder, and shall not commence any services under this Agreement until such insurance is obtained.

(i)   COMMERCIAL GENERAL LIABILITY INSURANCE. A broad form Commercial General Liability Insurance Policy in form and substance reasonably acceptable to the Contractor and including, without limitation, appropriate endorsements adding the following coverages: Premises and Operations Liability; Explosion, Collapse and Underground Damage Liability; Personal Injury Liability (with employee and contractual exclusions deleted); Broad Form Property Damage Liability; Contractual Liability supporting the Contractor's indemnification agreements in this Contract; Completed Operations and Products Liability for a period of not less than three (3) years following the Contractor's acceptance of the Project; and Independent Contractor's Protective Liability. The Commercial General Liability Insurance Policy must be written with a combined single limit of liability of not less than $1,000,000 for each occurrence of bodily injury and/or property damage and an annual aggregate of liability per project of not less than $2,000,000 for bodily injury and/or property damage, and an annual aggregate of liability of not less than $2,000,000 for Completed Operations and Products Liability.

(ii)   COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE. A Comprehensive Automobile Insurance Policy in form and substance reasonably acceptable to the Contractor [Grunley]. The Comprehensive Automobile Liability Insurance Policy must provide coverage for all owned, hired, rented and non-owned automobiles, and must be written with a combined single limit of liability of not less than $1,000,000 for each occurrence of bodily injury and/or property damage.

(iii)   WORKER'S COMPENSATION INSURANCE. A Worker's Compensation Insurance Policy in form and substance reasonably acceptable to the Contractor and in an amount not less than the statutory limits (as may be amended from time to time), including Employees Liability Insurance with limits of liability of not less than (i) $500,000 for bodily injury by accident, each accident, (ii) $500,000 for bodily injury by disease, each employee, and (iii) $500,000 aggregate liability for disease.

(iv)   PROPERTY INSURANCE. A Property Insurance Policy covering all materials, equipment and other portions of the Work stored off-site or in transit; it being expressly acknowledged and agreed by the Contractor that it shall assume responsibility for any loss or damage to such property.

(v)   UMBRELLA LIABILITY INSURANCE. An Umbrella Liability Insurance Policy in form and substance reasonably acceptable to the Contractor [Grunley] written in excess of the coverages provided by the insurance policies described above in subsections (i),(ii) and the Employer's Liability in (iii). The Umbrella Liability Insurance Policy must be written with a combined single limit not less than $5,000,000 for each occurrence of bodily injury and/or property damage, and an annual aggregate of liability of not less than $5,000,000 for bodily injury and/or property damage.

The Contractor shall not insure nor, *in the absence of fault on it's part*, be responsible for any loss or damage to tools, equipment or other property of any kind owned, rented or leased by the Subcontractors, sub-subcontractors, or their respective employees or agents.

## BONDS

7. The Subcontract shall furnish performance and payment bonds in a form satisfactory to the Contractor and in the Department of the Treasury's approved sureties list, in an amount equal to the Subcontract sum, which bonds shall carry the surety's consent to changes in price and time of performance necessary to conform to Prime Contract requirements. Furnishing of said bonds shall be a condition precedent to the Contractor's obligation to release partial payments. Contract price includes the sum of __included in contract and option pricing__ Dollars ($_____) to cover the Subcontractor's cost for the bond.

4

Case 1:07-cv-00967-HHK    Document 1-2    Filed 05/24/2007    Page 6 of 9



#### SHOP DRAWINGS, SAMPLES AND DATA SUBMISSIONS

8. All submittals such as shop drawings, catalogs, samples and material lists required by Prime Contract, which pertain to this work, shall be furnished in a complete and timely manner. Subcontractor shall be responsible for delays because of failure to do so and for any deviation from plans and specifications. All deviations from the Prime Contract documents must be noted clearly on the submittals, and by separate cover letter the Subcontractor shall state reasons for the deviation and refer to the applicable contract provision. The complete set of submissions for this Subcontract work shall be submitted by the Subcontractor to the Contractor within thirty (30) days from the date of this Subcontract, unless otherwise stated in the Contractor's Schedule of Progress. Approval by the Owner or the Contractor does not constitute a waiver or modification of the Prime Contract requirements.

#### TIME IS OF THE ESSENCE

9. Time is of the essence. The Contractor has the right to direct the manner in which the Subcontractor performs its work *as the contractor and subcontractor mutually agree*. Subcontractor shall proceed with the performance of the work at such time and in such sequence as ~~the Contractor may direct and/or as~~ required by the Schedule of Progress, which may be *reasonably* updated and revised from time to time by the Contractor as working conditions require, including overtime or shift work performance as necessary. If overtime or additional shifts are required solely to accelerate project completion through no fault of the subcontractor, it shall be authorized in writing prior to such acceleration effort and be paid for by the Contractor. ~~Payments due may be withheld to insure timely progress and completion of work.~~ The Subcontractor shall be liable for all losses and damages incurred by the Contractor ~~(including consequential damages)~~ due to inexcusable delays of the Subcontractor *but only to the extent caused by the subcontractor* in the *critical path of the performance of the work, including delay costs not reimbursable from the Owner due to concurrent, inexcusable delays of the Subcontractor. Notwithstanding other language, Subcontractor's planning and pricing are premised upon it's commencement of work in accordance with the project schedule nearest in date to the signing of this subcontract, and uninterrupted performance to completion in accordance with the sequence shown by that schedule. Changes to these premises shall be treated as a change order.*

#### EXTENSIONS OF TIME

10. *With respect to delays caused by the owner*, Subcontractor shall be entitled to an extension of time for performing and completing the work covered by this subcontract upon the same terms and conditions an extension of time is allowable under the Prime Contract, and only to the extent that an extension of time is actually granted to the Contractor by Owner, or its representative under the Prime Contract. The Subcontractor shall give notice of the excusable delay to the Contractor in writing within ~~three (3)~~ *seven (7)* calendar days from the beginning of said delay in order that the Contractor may in turn notify the Owner. If notice is not given timely, said excusable delay may be considered waived. The Owner's decision, or its representative's, with regard to the delay, including the assessment of liquidated damages, shall be binding upon and chargeable to the Subcontractor, but only if and to the extent such damages are caused by the subcontractor, subject to the disputes procedure provided in the Prime Contract.

#### DAMAGES FOR DELAY

11. The Contractor shall not be independently liable to Subcontractor for any unforeseeable delay or interference occurring ~~beyond the Contractor's control or~~ for delay or interference caused by Owner ~~or other subcontractors or suppliers. Subcontractor shall only be entitled to reimbursement for any damages for delays recovered on its behalf by the Contractor from the Owner or others.~~ The Subcontractor shall have the right, at its expense, to exercise all provisions of the Prime Contract to recover said damages against the Owner. In the event that the Contractor seeks to recover damage for delay against the owner or others and the Subcontractor participates in such claim, the Subcontractor shall be responsible for its pro rata share of any legal expert or other expenses in presenting and/or prosecuting the overall claims. ~~The Contractor shall have the right, at any time and for any reason, to delay or suspend the whole or any part of the work herein. A time extension shall be the sole and exclusive remedy of the Subcontractor for delays or suspensions caused by Contractor, even if the delays or suspensions were: (1) of a kind not contemplated by the parties, (2) amounted to an abandonment of the contract, or (3) were caused by active interference.~~

#### SCHEDULE

12. The Contractor may schedule this project using CPM Schedule techniques and/or simple bar charts. Subcontractor agrees to meet with the Contractor and to provide the necessary detailed information to properly depict activities, including their costs and duration, at no additional cost to the Contractor. All such data shall be provided within ~~fifteen (15) days~~ *a reasonable duration* of the Contractor's written notice and request. The Contractor may at its option withhold making payments to the Subcontractor until the Subcontractor has provided said information. The Contractor may *make reasonable modifications to* ~~modify and change~~ the schedule from time to time as it deems appropriate in accordance with actual performance conditions. Subcontractor shall perform the work as directed by such schedules as expeditiously as possible despite any pending disputes.

#### DEFAULT TERMINATION

13. The following events determined by the good faith judgment of the Contractor shall be deemed a breach of this Agreement by the Subcontractor: failure to expeditiously prosecute and complete the whole or any *material* part of the work in accordance with the current Schedule of Progress and/or ...ctions from the Contractor, failure to pay for labor and material, payroll taxes, contributions or insurance premiums; *unreasonable* interference with the performance of work by others for any reason; an act of bankruptcy or insolvency; or any other material failure to fulfill obligations of this Subcontract or of the ...ime Contract concerning the Subcontractor's work or responsibilities. If the Subcontractor *materially* breaches the Subcontract, the Contractor may terminate Subcontractor's right to proceed upon ~~three (3)~~ *Ten (10)* days written notice *and opportunity to cure*. In the event that the Contractor believes in good faith that the work is being endangered by the Subcontractor's failure to prosecute the work or take action, such written notice may be omitted and the Subcontractor's performance in whole or in part may be immediately terminated. The Contractor may then have the work completed and may use Subcontractor's *raw* material, ~~supplies, tools and equipment to complete~~. Subcontractor and its surety shall continue to be liable for all costs to complete and any damages and expenses including reasonable counsel fees, liquidated damages assessed by owner and other liabilities which may result from the default and breach, without waiver of any other rights or remedies available to the Contractor, ~~including right of setoff and collection of any funds which may be due Subcontractor under other subcontracts with the Contractor. If the Contractor wrongfully exercises its default option under this Article, the Subcontractor's remedy shall be solely and exclusively under Article 27, Termination for Convenience.~~

~~The Subcontractor agrees that in the event the Contractor is terminated for default by the Owner, all disputes relating to or arising out of the Subcontract shall be stayed pending the final resolution of the Contractor's termination for default in accordance with the administrative and/or judicial disputes procedures in the prime contract. The Contractor further agrees that all payment bond actions by the Subcontractor against the Contractor shall be stayed pending the final resolution of the Contractor's termination for default. In the event that the Owner's termination for default of the Contractor is upheld, the Subcontractor agrees that the amount of any recovery the Subcontractor is entitled to from the Contractor shall be limited to the recovery allowed pursuant to Article 27, Termination for Convenience.~~

#### EXTRA WORK

14. The Contractor may at any time direct the Subcontractor to perform extra work or changes under this Subcontract. Only extra work authorized by the Contractor as an extra or change in writing shall be paid for by the Contractor. If the extra work direction does not originate from Owner's direction and there is no prior agreement on price, then Subcontractor shall be paid for the actual direct costs of said work plus ~~fifteen percent (15%)~~ *twenty percent (20%)*

4

TMC Attachment A

TMC's contract shall be based on the following documents
Specifications dated February 27, 2001
    Specification Sections:
        01010, 01015, 01030, 01500, 07270, 15050, 15055, 15060, 15071, 15075,
        15081, 15082, 15083, 15110, 15121, 15122, 15140, 15150, 15160, 15181,
        15182, 18183, 15185, 15186, 15189, 15410, 15415, 15430, 15441, 15445,
        15465, 15625, 15672, 15725, 15761, 15767, 15815, 15820, 15837, 15845,
        15855, 15861, 15900, 15940, 15990, 15995

Drawing dated 02.27.01
    Phasing Drawings:
        A-010B, A-010C2
    Mechanical Base Drawings:
        M-001B, M-101B, M-012B, M-103B, M-104B, M-105B, M-106B, M-107B,
        M-108B, M-109B, M-110B, M-111B, M-112B, M-113B, M-114B, M-115B,
        M-116B, M-117B, M-118B, M-301B, M-501B, M-502B, M-601B, M-602B,
        M-603B, M-604B, M-605B, M-606B, M-607B, M-608B, M-609B
    Mechanical Contract Option No. 1 Drawings:
        M-001C1, M-101C1, M-102C1, M-103C1, M-104C1, M-501C1, M-601C1,
        M0602C1, M-603C1
    Mechanical Contract Option No. 2 Drawings:
        M-001C2, M-101C2, M-102C2, M-103C2, M-104C2, M-105C2, M-106C2,
        M-107C2, M-108C2, M-109C2, M-110C2, M-111C2, M-601C2

    Plumbing Base Drawings:
        P-101B, P-101BX, P-102B, P-102BX, P-403B, P-501B, P-502B, P-601B,
        P-602B
    Plumbing Contract Option No. 2 Drawings:
        P-101C2, P-102C2, P-103C2, P-104C2, P-105C2, P-106C2, P-107C2,
        P-401C2, P-402C2, P-402C2, P-501C2, P-601C2

    Amended Mechanical Base Drawings dated 03/22/01 (Amendment No. 8)
        M-001B, M-102B, M-104B, M-105B, M-108B, M-111B, M-112B, M-113B,
        M-114B, M-115B, M-118B

**We acknowledge the following Addenda:**

Amendment No. 7 dated 3-26-01
Amendment No. 8 dated 3-30-01
Amendment No. 9 dated 4-4-01

See attached pages for:
Attachment B – Bid Clarifications
Attachment C – Expected Working Conditions



Tyler Mechanical Contracting
IRS Modernization
Attachment B

### BID CLARIFICATIONS

1. We will lay new underground plumbing pipe in trench next to existing pipe and abandon existing pipe in place.
2. All demolition, including plumbing fixtures, will be by others.
3. We will fire stop only penetrations for our new piping and ductwork.
4. Note #3 on Drawing P-602B requires two coats of asphalt coating where acid conditions occur. We include no coating other than the factory applied coating on the cast iron pipe.
5. Walls will need to be opened sufficiently to allow access for mechanical equipment and patched following installation of equipment, as specified in the body of the contract.
6. Per conversation with Jason at Grunley, all stone to be provided by excavation contractor. Tyler will use stone from this stockpile in basement level for bedding and backfilling of underground plumbing piping. We exclude soil compaction.



Tyler Mechanical Contracting
IRS Modernization
Attachment C

### EXPECTED WORKING CONDITIONS

1. We expect that the existing plumbing shown on the drawings to be accurate. We excluded additional backfill to compensate for excessive existing pipe settlement that may be required to provide proper bed for the new piping.
2. We must install all underground piping with grade work beginning at the ~~deepest~~ *shallowest (to prevent contamination of new swr) CD* point. We will require the following minimum time durations for installation of underground plumbing piping systems:
    a. Phase 1 ~~12 weeks~~ [crossed out] *CD*
    b. Phase 2 – TBD [crossed out]
    c. Phase 3 – TBD [crossed out]
3. Plumbing drawings direct that piping be replaced "in kind". Our proposal is based on the sizes shown on the plumbing drawings and any deviations will be at additional cost. All cast iron piping to be installed under this proposal will be service weight.



| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA f/u/b/o *<br>TYLER MECHANICAL CONTRACTING, INC. | NATIONAL FIRE INSURANCE COMPANY OF HARTFORD |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Frederick County<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
| Michael Green   DC Bar #231597<br>Margolis, Pritzker, Epstein & Blatt, P.A.<br>110 West Road - Suite 222<br>Towson, Maryland 21204<br>(410) 823-2222 | Herman M. Braude<br>Braude & Margulies, P.C.<br>1200 Potomac Street, N.W.<br>Washington, D.C. 20007<br>(202) 471-5400 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- [ ] 410 Antitrust

### ○ B. Personal Injury/Malpractice
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- [ ] 151 Medicare Act

Social Security:
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 610 Agriculture
- [ ] 620 Other Food &Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**Other Statutes**
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ⦿ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☒ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
40 U.S.C. Sec. 3131 et seq. (Miller Act) Claim under payment bond for amount due for labor and materials furnished to general contractor on Fed project

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ 283,453.00   Check YES only if demanded in compl:
JURY DEMAND: YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐ NO ☒   If yes, please complete related case form.

DATE 5/21/2007   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

Contractor's Services, Inc.
3 Talbott Avenue
Suite 202A
Timonium, MD 21093
410-453-0925

Invoice #:      4633
Invoice Date:   9/26/01

Bill To: TYLER MECHANICAL
        CONTRACTING, INC.
        10087 Tyler Pl,No.2 Hyatt Park
        Ijamsville, MD 21754

| Description | Amount |
|---|---|
| Bond No. 017-006-892<br>Bond Amount $6,200,000<br>Obligee: Gunley Construction Co, Inc.<br>Mechanical Work for Modernization of IRS Head-<br>quarters, 1111 Constitution Ave, NW, Washington DC<br>Gunley Job #G01 74 - Cost Code: 15-100<br>(24% surcharge applied to premium for 4-year term) | 45,086.00 |

APPROVED
OCT 1 2001
BY_____

PAYMENT IS DUE 30 DAYS FROM INVOICE DATE

                                        TOTAL DUE  $      45,086.00

Please return copy of invoice with check payable to CONTRACTOR'S SERVICES, INC.
                              Thank you.

BOND NO. 929 0289

# PAYMENT BOND
(See instructions on reverse)

DATE BOND EXECUTED (Must be same or later than date of contract)
05/24/01

FORM APPROVED OMB NO.
9000-0045

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

PRINCIPAL (Legal name and business address)

Grunley Construction Co., Inc.
5010 Nicholson Lane, Suite I
Rockville, MD  20852

TYPE OF ORGANIZATION ("X" one)

☐ INDIVIDUAL     ☐ PARTNERSHIP
☐ JOINT VENTURE  ☒ CORPORATION

STATE OF INCORPORATION
Maryland

SURETY(IES) (Name(s) and business address(es))

National Fire Insurance Company of Hartford,
   a Connecticut corporation
8403 Colesville Road, Suite 500
Silver Spring, Maryland  20910

PENAL SUM OF BOND
| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 3 | 000 | 000 | 00 |

CONTRACT DATE: 05/22/01
CONTRACT NO.: GS11P01MKC0001

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

PRINCIPAL

| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
|---|---|---|---|---|
| NAME(S) & TITLE(S) (Typed) | 1. Kenneth M. Grunley, President | 2. | 3. | |

INDIVIDUAL SURETY(IES)

| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
|---|---|---|
| NAME(S) (Typed) | 1. | 2. |

CORPORATE SURETY(IES)

| | NAME & ADDRESS | National Fire Ins. Co. of Hartford, a Conn. corp. 8403 Colesville Rd., Suite 500, Silver Spring, MD | STATE OF INC. Connecticut | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| SURETY A | SIGNATURE(S) | 1. | 2. | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | George T. Elliott, Attorney-in-Fact | 2. | | |

NSN 7540-01-152-8061
Previous edition [not usable]

EXPIRATION DATE: 9-30-95

25-205

STANDARD FORM 25-A (REV. 1-90)
Prescribed by GSA — FAR (48 CFR) 53.228(c)

NO. 968    P. 6/19    NOV. 28. 2006 9:27AM    CNA SURETY

## POWER OF ATTORNEY APPOINTING INDIVIDUAL ATTORNEY-IN-FACT

Know All Men By These Presents, That CONTINENTAL CASUALTY COMPANY, an Illinois corporation, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, a Connecticut corporation, AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a Pennsylvania corporation (herein collectively called "the CCC Surety Companies"), are duly organized and existing corporations having their principal offices in the City of Chicago, and State of Illinois, and that they do by virtue of the signature and seals herein affixed hereby make, constitute and appoint Patrice E. Bock, George T. Elliott, Individually

of   Gaithersburg, Maryland

their true and lawful Attorney(s)-in-Fact with full power and authority hereby conferred to sign, seal and execute for and on their behalf bonds, undertakings and other obligatory instruments of similar nature

- In Unlimited Amounts -

and to bind them thereby as fully and to the same extent as if such instruments were signed by a duly authorized officer of their corporations and all the acts of said Attorney, pursuant to the authority hereby given are hereby ratified and confirmed.

This Power of Attorney is made and executed pursuant to and by authority of the By-Laws and Resolutions, printed on the reverse hereof, duly adopted, as indicated, by the Boards of Directors of the corporations.

In Witness Whereof, the CCC Surety Companies have caused these presents to be signed by their Group Vice President and their corporate seals to be hereto affixed on this   17th   day of   May  , 1999.

CONTINENTAL CASUALTY COMPANY
NATIONAL FIRE INSURANCE COMPANY OF HARTFORD
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA

Marvin J. Cashion       Group Vice President

State of Illinois, County of Cook, ss:
On this   17th   day of   May  , 1999, before me personally came Marvin J. Cashion, to me known, who, being by me duly sworn, did depose and say: that he resides in the City of Chicago, State of Illinois; that he is a Group Vice President of CONTINENTAL CASUALTY COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, and AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA described in and which executed the above instrument; that he knows the seals of said corporations; that the seals affixed to the said instrument are such corporate seals; that they were so affixed pursuant to authority given by the Boards of Directors of said corporations and that he signed his name thereto pursuant to like authority, and acknowledges same to be the act and deed of said corporations.

My Commission Expires March 6, 2000       Mary Jo Abel       Notary Public

### CERTIFICATE

I, Mary A. Ribikawskis, Assistant Secretary of CONTINENTAL CASUALTY COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, and AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA do hereby certify that the Power of Attorney herein above set forth is still in force, and further certify that the By-Law and Resolution of the Board of Directors of each corporation printed on the reverse hereof are still in force. In testimony whereof I have hereunto subscribed my name and affixed the seals of the said corporations this   24th   day of   May  , 2001.

CONTINENTAL CASUALTY COMPANY
NATIONAL FIRE INSURANCE COMPANY OF HARTFORD
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA

Mary A. Ribikawskis       Assistant Secretary

(Rev.10/1/97)